Chief Justice Bibb
delivered the Opinion of the Court.
Hart’s heirs, the lessors of the plaintiff in ejectment, gave in evidence a grant of the Commonwealth of Kentucky, to Joseph Hart, for 1000 acres, bearing date 4th December, 1810, founded on aland office Treasury warrant, issued by the State of Virginia, entered on the 17th December, 1782, surveyed loth April, 1809.
The defendants in ejectment gave in evidence, a grant of the Commonwealth of Kentucky to William Bell, bearing date on the 18th of February, 1793, founded on land office Treasuary warrants, issued by the State, of Virginia, surveyed 1st of March, 1787, for 75,000 acres.
These grants conflict, and both include the tenements in controversy.
The plaintiff, to avoid the force of this elder grant to Bell, gave in evidence, deeds from Bell the patentee, to Robert Morris, from Morris to Humphrey Marshall, a deed of relinquishment from Marshall to the State of Kentucky, bearing date *625 45th September, 1803, for 60,000 acres, by specified boundaries, part of the patent for 75,000 acres, and proved that the boundaries so specified in the relinqnishment, included the tenement in controversy.
Defendants under Kranet_ er
Instruction for plaintiff,
Defendants potion for ve ■u e
Judgment of the circuit pontiff on* the question of law re-:<ierved-
Question stated.
The defendants in ejectment gave in evidence, a deed from said Humphrey Marshall to the defendant Stith, for the same land described in the previous deed of relinquishment to the State of Kentucky; this deed to Stith bears date 6th May, 1818.
The plaintiff moved the court to instruct the jury, that if they believed from the evidence, that the defendant was living within the boundary of Hart’s patent at the institution of the ejectment, they ought to find for the plaintiff, and this instruction was given.
The defendant moved (lie court to instruct the jury, that the relinquishment by Marshall did not pass the title to the State of Kentucky; but that the title passed to Stith by the deed of Marshall; this instruction was refused.
The verdict was found for the plaintiff, subject to the final decision of the court upon the question of law reserved and contained in the instructions moved. The circuit judge gave judgment for the plaintiff in ejectment upon the question reserved, am! the defendant appealed, '
The instruction moved by the plaintiff, includes the negative of that moved by the defendant, and therefore, asserts the proposition, that by the deed of relinquishment to the State of 1802, the previous grant to Bell, became extinct pro tanto, that the land so surveyed for him in 1787 ,and granted to him in 17,93 became vacant, waste and unappropriated, so that tbe subsequent grant to Hart of 1810, was the elder, and only subsisting title to the land in controversy. The judgment of the court affirms the proposition asserted by the plaintiff.
A defendant in ejectment may protect himself a? gainst the claim of the lessors, by showing an elder, subsisting, out-standing title. The grant to Bell was the elder title; if that is not extinguished, or vacated, so as to be no longer a subsisting title op? ' *626 posed to Hurt’s patent, the plaintiff in ejectment cannot recover. The efficacy of the relinquishment of Marshall to work such extinguishment or vacancy of Bell’s patent, (supposing that the relinqushment. to be valid and effectual as between the State and Marshall,) is the first question in order; it supersedes all other questions, if it be decided against the plaintiff.
Hart’s patent is founded on a specific consideration expressed on its face; a warrant issued by the State of Virginia, entered in 1782, surveyed and carried into grant in pursuance of the provisions of law. Its legal effects and consequences depend upon the laws prescribing the inodes of suing out grants for waste and unappropriated lands, and the powers and duties of the officers of the government. The warrant, entry, survey and grant, are so many progressive links in the chain of title, all conneded and explanatory of the right and interests derived from the State. The interest which the grantee acquired, and which the,State intended to grant, and which the officers of the government had power to grant, are explained by the recitals in the patent compared with the laws. Upon the face of Hart’s patent, it is apparent that the grant to him is on the old consideration, of a warrant from the State of Virginia, entered in 1782, and in prosecution of the interest so derived from the laws of Virginia for suing out grants for waste and unappropriated lands; that it is not founded on any new consideration or contract, between the State of Kentucky and the patentee Hart, originating since the relinquishment made by Marshall of his interest under Bell’s patent.
The relinquishment of Marshall, if effectual in favor of Hal t’s grant as proposed by the plaintiff, must operate either by way of extinguishment of Bell’s previous grant, or by way of confirmation of the' incipient interest of Hart under the entry o'f 1782.
Whether the act of Marshall amounted to an ex-tinguishment of Bell’s patent for the land so relin- *627 flushed, depends mainly upon the statutes of Ken-tacky, under which that proceeding was had.
^uthorizJn4’ the rc)in-'° quishment of lan(1 t0 t*>e surveyor’s 6 office!
AotofiSOi, authorizing q^men't in the register’s office,
Virginia had not . fonds^but Kentucky ente-edor surveyed.
The first is the act of December, 1794, (1 Litt. Laws, 222, 2 Dig. 845,) authorizing the surveyor to receive and record the relinquishment or disclaimer, by'an entry of the tract or part thereof, intended to be relinquished or disclaimed. That act thus declares the eiiect: “By virtue of the aforesaid entry and disclaimer, all th.e interest of the party in the said tract shall be vested in this Commonwealth, and shall never be reclaimed by the party, his, her, or their representatives, provided always, that nothing in this act contained shall be so construed as to effect or injure the claim, or claims of any other person or persons, who may have any entry, or entries on the lands so relinguished or disclaimed.”
The other act is of 1801, (2 Dig. 846; 2 Litt. Laws, 435,) authorizing the register of the land office, and requiring of him, to receive “any relinquishment of rights to land in the same manner, and under the same regulations as are prescribed for relinquishment of rights to lands with the surveyor of the county &c,” by the act of 1794. By the 17th section of the revenue law of 1799, 2 Dig. 1081, 2 Litt. laws, chap. 71, p. 321,) it will be seen that upon making such relinquishment, the party who made it, was entitled to a warrant from the Auditor of Public Accounts, for the amount of taxes paid upon the lands so relinquished after a deduction therefrom, of seven and a half per cent, which warrant was receivable in payment of taxes as other audited warrants.
By the revenue system of Virginia, prevailing before the separation of Kentucky, unpatented lands were not taxed. But Kentucky by her act of 1792, (1 Litt. laws, chap. X, sect. 14, p. 71,) changed the system, and required all owners, or proprietors of lands in the State, whether they claimed by patent or by entry only, to give in the quantity claimed to the proper officers of the revenue for taxation. And without running into a detail of all the revenue laws, it will be seen from the 17th section of the act *628 of 1799, before referred to, that the State declared for her herself, a perpetual lien on every tract of land, and every part for all taxes and interest thereon; moreover subjected to distress, the slaves, goods and chattels found on the land, for which the tax was in arrear, in the possession of any person claiming under the proprietor from whom the tax was due; tenants who were obliged to pay the taxes (without special contract to do so,) were placed in the situation of the State, as to the lion against thO owers or proprietors under whom they held, and tenants and all others, were declared to have a lien for taxes paid by them against all persons, with á right to retain possession, until the taxes and interest whicli tliéy had paid were refunded, except against persons recovering the lands, who had also paid the taxes. This system of taxing the claims by entry or patent, when applied to the actual condition of the multiplied conflicting entries and grants lessened the burthen of taxation on each claimant, by multiplying the number of acres tax' ed.
Relinquishment of lands to the stale by the owner of the superi- or claifn, does not operate . as an extin-guishment to the benefit of an inferior claim, but the act passes the superi- or t’tle to the government.
By the system of revenue, compared with the pro^ visions for relinquishment of lands, it will appear that the State yielded her claim upon the inco vici-nal for revenue accrued and accruing on the lands felinqüished, as the consideration for the relinquish-, infent of the title. The State does not thus purchase iri the claim of tiie pérstín so relinquishing, for the benefit of other claimants^ but for herself, tíuch relinquishment is required from á person lawfully authorized to relinquish t!ie claim, so as to vest the interest of the party in'this Commonwealth, The expressions, “ail the interest -of the party in the sáid tract shall be vested i;i this Commonwealth;” and that it shall not‘‘affect or injure the claim, or claims of any other person, or persons who may have any entry, or entries on the lands so relinquished o-?- disclaimed,” connected with the system of revenue, show that it is n.ot the intent of the Statute to extinguish the'eiaim, but to vest it in the Commonwealth to be used at her pleasure and for her benefit. To vest the interest in the Commonwealth-, and to extinguish it, are opposites. If there *629 áré two entries or patents for the same land, and one of the owners relinquishes; the other would be affected, beneficially, if such relinquishment operated by way of extinguishment of that conflicting claim, or injuriously, (if the statute had not otherwise declared,) by reason of the perpetual lien of the Commonwealth, for the revenue which had been assessed and refunded, br by the supremacy of the claim of the Commonwealth, when her claim and the claim of the individual came in conflict. The benefit and tlie injury are both excluded by the statute; the claim of others who have an entry or entries for the sam'e lands, are not to be made better or worse by thé relinquishment. The statute itself, does not authorize the proposition, that the claim of the relinquisher becomes thereby extinct; annihilated and merged, for the benefit of other conflicting claimants; it is vested in the Commonwealth, and may be granted out at the discretion of the government.
Grant of the state °f a. juu] escheat-ed to the government heirs') ovor-reaches a mesne grant
Lands es-re‘ ¿rieitetUo °r the state, are pot embraced ^ authorising’ th? appiypri-vacan tía ml* • J — —and
The question, whether a conflicting claim, which lapsed or accrued, or vested in government, did thereby become extinct, or merged, so as to mure to the benefit and confirmation of other adverse conflicting claims to the same land, is not now a new subject. In the cases of Elmondorff vs. Carmichael, decided by this court, (3 Litt. 473,) and of Governeur’s heirs vs. Robertson, decided by the Supreme Court of the United States, (XI Wheat. 332,) it is decided that the patent to Brantz, which escheated and came to the Commonwealth, by the death of the patentee without heirs, and granted to Governeurs in 1799, did overreach the grant to P uncan Rose of 1785.
Both of those adjudications are founded on the doc-triñe, that the government is quiesent in the grants Sued out under her land laws; that the grantee is the active agent; that the government acts upon his information and suggestion; -that the grantee was in his choice confined to the vacant, and forbidden to take appropriated lands; that the government is not estopped by her grant made to one, from re-granting an escheated, or lapsed title falling in from another grantee,; that a title which was formerly *630 granted (o one person, which again comes to the Commonwealth, is not extinguished; that it does-not inure to the benefit of other patentees who have procured warrants, entries, surveys and grants under the laws of 1779.
Grants obtained for such lands, under Iho general laws are void.
In those cases it is true, that the title of Brants accrued to the Commonwealth oí Kentucky, after the grant to Duncan Rose, which was supposed by the counsel for those holding under it, to have been confirmed and effectuated as the superior and elder title by the falling in of .Brantz’s title; whereas in this case, Marshall’s relinquishment to the State, of Beil’s patent is first, and the grant to Hart is subsequent. But this does not produce an exception in favor of Hart’s grant, from the force of the principles adjudicated in the cases recited. Those decisions assert the positions broadly and without qualification, that every patentee under the laws of 1779, is himself bound to take care that his patent, is for waste and unappropriated lands; that ecsheat-ed lands are not liable to be appropriated in that mode. The chain of title from the warrant to ths grant is viewed as descriptive of the claim and title acquired by the patentee; and that another claim or patent for the same land, when it shall come to the State, is a separate and distinct title in the State, not merged nor amalgamated, in the general mass of the demesne lands which are subject to be appropriated by warrants, entries and surveys; that such previously patented land does not become waste and unappropriated within the meaning of the statutes; that it remains with the State as a subsisting title, outstanding against all individual claimants, and may be regranted by the State at pleasure, as amply and as beneficially as the original patentee himself might have done.
The doctrine that the title so falling in to the Slate was exstinct that it inured byway of extinguishment; that the accrual to the State operated by way of confirmation of other claims and interests conflicting therewith, was pressed upon both courts in the arguments of counsel. But the courts repelled the argument, and cited the cases of Wil *631 cox vs. Calloway, (1 Wash. 38,) and Jones vs. Jones, (1 Call. 468,) to prove that a lapsed patent might be regranted by the government at any future time, by relation to the date of the original grant, and so as to “avoid by priority all mesne grants;” that grants for escheated or forfeited lands, obtained under the laws for appropriating the vacant lands of the Commonwealth were void.
Cases hereto-foreadjudg-con‘ cJusive— — JudgeOws-ley dissent-inS'
No lands ^"«Is rc-ac-quired by the state,are sub-under the general laws,
Judgment fe mandate,
The Chief Justice, speaking for himself, feels bound, after the solemn discussion which the grant of this state to Governeurs underwent in those two cases, to submit to the principles Uierem adjudicated, howsoever he may regret t,hat the judges did not come to a different conclusion, so as to have given aid in silencing and extinguishing the multiplied conflicting claims which infest this land, like the locusts of Egypt. A majority of the court, Judge Owsley dissenting, are of opinion, that the determinations in the two cases cpioted have settled the main question in this cause against the plaintiff in ejectment.
In the progress of population, manners, habits, customs, wealth and commerce, the government has had, and must have, successive acquisitions, not only by escheats and forfeitures, but also by purchases of individuals of their titles, for the purpose of erecting public buildings, and other needful uses. If by these acquisitions to the State, the titles became extinct and annihilated, and the lands liable to be included in grants sued out under the laws framed for the ordinary appropriation of vacant lands, great inconvenience and mischiefs would follow. The State in her political sovereign and corporate capacity, is as capable to receive from an individual a title to land, as that individual himself was to have acquired the title. The State has capacity to take and to hold a title, until by her laws she choses to part with that identical title. No law has yet been enacted in this State to authorize persons to sue out grants for lands- returning to the State by escheats, forfeitures or relinquishments.
Certificate. — This court is of opinion, Judge Owsly dissenting, that if the title granted to Bell by the *632 patent of 1793, was by the several deeds from the Patentee to Marshall, and by his relinquishment to the State as given in evidence, reinvested in the Commonwealth in 1802, as supposed by the plaintiff in ejectment; yet the grant to Joseph Hart of 1810, founded on a land office Treasury warrant, entered in 1782, and surveyed in 1809, did not include and overreach the title granted by the patent to Bell; but that said patent to Bell, remains yet an unextinguished subsisting title, adversary to Hart’s grant; and outstanding as against the claim of the plaintiff, and the plaintiff in ejectment was not entitled to recover, and the decision upon this point renders an opinion upon the other questions in the case unnecessary. It is, therefore, considered by this court, that the judgment of the circuit court be reversed, and that the case be remanded, with direction to enter judgment upon the point reserved, for the defendants.
Crittenden and Wickliffe, for appellants; Darby, fop appellees.
Appellants tp recover their costs.